GREENBERG, RHEIN AND MARGOLIS, INC. *v.* NORRIS-
FAYE HORTON ENTERPRISES, INC., ET AL.
(14159)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued February 13—decision released March 26, 1991

*John A. Keyes,* with whom, on the brief, was *Martin M. Looney,* for the appellant (plaintiff).

*William C. Eustace,* for the appellee (individual co-defendant).

PETERS, C. J. The only issue on this appeal is whether the trial court abused its discretion in denying an application for a prejudgment remedy. The plaintiff, Greenberg, Rhein and Margolis, Inc., brought an action against the corporate defendant, Norris-Faye Horton Enterprises, Inc., and the individual defendant, Faye T. Horton (Horton), to recover the balance due on insurance premiums paid by the plaintiff. In conjunction with the filing of this complaint, the plaintiff sought to attach real property personally owned by Horton. After a hearing held pursuant to General Statutes § 52-278d,[1] the trial court denied the plaintiff's application on the ground that the plaintiff had failed to show probable cause for its issuance. The plaintiff appealed to the Appellate Court in accordance with the provisions of General Statutes § 52-278*l* (a) (1).[2] We transferred the appeal to this court pursuant to Practice Book § 4023 and now affirm.

The evidence presented by the plaintiff at the probable cause hearing consisted of the testimony of the plaintiff's vice president, David Margolis, and the contents of two documents[3] that were admitted by stipu-

[1] General Statutes § 52-278d provides in relevant part: "HEARING ON PREJUDGMENT REMEDY APPLICATION. DETERMINATION BY THE COURT. SERVICE OF PROCESS. (a) The defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of whether or not there is probable cause to sustain the validity of the plaintiff's claim."

[2] General Statutes § 52-278*l* (a) (1) provides in relevant part: "APPEAL. (a) An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d . . . shall be deemed a final judgment for purposes of appeal."

[3] The two documents consisted of a "Customer Activity Report," which was a ledger account detailing the corporate defendant's indebtedness to the plaintiff, and an "Insurance Premium Financing Note and Security Agreement."

lation. Margolis testified that the plaintiff was seeking reimbursement from the defendants for $3968 in insurance premiums that the plaintiff had become obligated to pay the Union Trust Company because of an indemnity agreement contained on the back of an "Insurance Premium Financing Note and Security Agreement" (insurance premium note or note).

The insurance premium note memorialized the obligation of the "maker-debtor," described at the top of the note as the corporate defendant, to pay $6000 in designated installments to its payee, the Union Trust Company. The note stipulated that its proceeds were to be used to pay the balance of insurance premiums owed by "the debtor" to the Aetna Casualty and Surety Company under insurance policies designated by policy number. At the bottom of the note, in the place designated in the form for the signature of "Maker-Debtor(s)," appeared the signature of "Faye T. Horton." Horton's signature was not accompanied by any express indication that she was signing as representative of the corporate defendant.

The back of the insurance premium note contained a printed "warranty" to be given by an insurance agent or broker; this warranty was signed by Margolis on behalf of the plaintiff. The warranty identified "the debtor" as the insured designated in the insurance policy on the front of the note and represented that whoever had signed on behalf of a corporate entity had authority to do so. The warranty also contained an indemnity clause in which the warrantor promised to hold the Union Trust Company harmless from any loss arising out of the financing arrangement.

On the strength of the plaintiff's allegation that its rights against the defendants arose out of the indemnity agreement on the back of the insurance premium

note, the plaintiff claimed that it had an enforceable claim against Horton personally because she had signed the insurance premium note on its front. The plaintiff's complaint, however, contained no allegation that the plaintiff was the holder, transferee or assignee of the insurance premium note. Margolis, on cross-examination, was unable to clarify on what theory the plaintiff, as a stranger to the note, was entitled to invoke the liability that a maker of the note might have to its payee, the Union Trust Company. Furthermore, Margolis conceded, on cross-examination, that the insured "debtor" on whose behalf the premiums had been paid was the corporate defendant, not Horton. Finally, the plaintiff's counsel, in his argument before the trial court, withdrew any claim that Horton had signed as guarantor, contending instead that she was liable merely because she had signed as the debtor.[4]

On this state of the record, the trial court concluded that there had been "no showing of probable cause as to the defendant Faye Horton" and denied the plaintiff's application for a prejudgment remedy as to her real property. The plaintiff maintains that this ruling should be reversed because Horton was personally obligated on the insurance premium note: (1) as an ambiguous signer of an instrument, in accordance with the provisions of General Statutes § 42a-3-403;[5] or (2) as

---

[4] In his closing argument to the court, counsel for the plaintiff described Horton's liability as follows: "Faye Horton signed as guarantor. She signed personally." The court then inquired: "Signed what as guarantor?" Counsel replied: "She signed the note. Actually, it shouldn't be as guarantor, it's referenced in the note as debtor."

[5] General Statutes § 42a-3-403 provides in relevant part: "SIGNATURE BY AUTHORIZED REPRESENTATIVE. (1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

"(2) An authorized representative who signs his own name to an instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative

an accommodation maker of an instrument, in accordance with the provisions of General Statutes § 42a-3-415.[6]

At the outset, we note the limited role that our case law assigns to appellate review of a trial court's broad discretion to deny or to grant a prejudgment remedy. It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim. We decide only whether the determination of the trial court constituted clear error. *New England Land Co.* v. *DeMarkey,* 213 Conn. 612, 620–21, 569 A.2d 1098 (1990); *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 479–80, 525 A.2d 935 (1987); *Solomon* v. *Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985); *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 176, 474 A.2d 795 (1984); *William M. Raveis & Associates, Inc.* v. *Kimball,* 186 Conn. 329, 333, 441 A.2d 200 (1982); *Augeri* v. *C. F. Wooding Co.,* 173 Conn. 426, 429, 378 A.2d 538 (1977). Applying this standard of review to the record in this case, we conclude that the plaintiff cannot prevail.

capacity; (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity."

[6] General Statutes § 42a-3-415 provides: "CONTRACT OF ACCOMMODATION PARTY. (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

"(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

"(4) An endorsement which shows that it is not in the chain of title is notice of its accommodation character.

"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

The plaintiff's principal contention is that Horton is personally liable because she failed to identify her signature on the insurance premium note as that of a representative of the corporate defendant. Her personal liability arises, according to the plaintiff, because she signed her name without specifying that she was signing as agent for, or officer of, the corporate defendant. The plaintiff maintains that, by virtue of the provisions of § 42a-3-403 (2), the ambiguity of Horton's signature imposed upon her the obligation of establishing that she was not personally liable, and that she failed to meet this burden at the trial court hearing. Although § 42a-3-403 (2) was not specifically brought to the attention of the trial court, we will presume, for present purposes, that this issue was adequately preserved to warrant appellate review.

An understanding of the import of the provisions of § 42a-3-403 (2) requires an examination of a number of sections in General Statutes §§ 42a-3-101 through 42a-3-805, otherwise known as article 3 of the Uniform Commercial Code. The plaintiff relies on that part of § 42a-3-403 (2) which provides: "An authorized representative who signs his own name to an instrument . . . (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity . . . ." The plaintiff has not, however, alleged or demonstrated how, as a stranger to the instrument, it is a contemplated beneficiary of this section. It is of course true that, to the extent that Horton was the maker of an instrument, she became obligated, under General Statutes § 42a-3-413 (1), to "pay the instrument according to its tenor." As a general matter, however, the obligation to pay the instrument contemplates a duty to pay the holder of an instrument; discharge of liability under General Statutes § 42a-3-603 (1) depends upon "payment or satisfaction to the holder."

See J. White & R. Summers, Uniform Commercial Code (3d Ed. 1988) § 13-21, p. 680. In other words, Horton arguably assumed a personal obligation to pay the amount due under the insurance premium note to its payee, the Union Trust Company, or to a subsequent holder to whom the Union Trust Company negotiated the note, but not to the plaintiff. Such legitimate doubts about the plaintiff's standing to invoke § 42a-3-403 (2), which were raised by Horton's counsel at the hearing, serve to sustain the validity of the trial court's conclusion that the plaintiff had not shown probable cause for its action against Horton.

Even if the plaintiff could surmount this hurdle, we are not persuaded that the evidence at trial was insufficient, as a preliminary matter on a prejudgment remedy hearing, to rebut the presumption of Horton's § 42a-3-403 (2) liability. The insurance premium note not only named the corporate debtor but expressly identified the corporation as its lone "maker-debtor." The plaintiff's witness Margolis, after having acknowledged that the defendant corporation was the debtor for whom insurance premiums had been paid, conceded that the plaintiff's only basis for pursuing Horton was the fact of her signature. Counsel for the plaintiff disavowed any claim that the plaintiff had relied on Horton as a guarantor of the debts of the defendant corporation. There was therefore no claim, anywhere in the record below, that the plaintiff was misled into assuming that Horton's ambiguous signature represented an undertaking of personal liability on her part. Had *Wyandot, Inc.* v. *Gracey Street Popcorn Co.*, 208 Conn. 248, 544 A.2d 180 (1988), on which the plaintiff now relies, been cited to the trial court, it would not have been clear error for the court to have concluded that the facts before it were sufficient to distinguish the holding in that case.[7]

---

[7] In *Wyandot, Inc.* v. *Gracey Street Popcorn Co.*, 208 Conn. 248, 544 A.2d 180 (1988), we reversed a trial court decision holding the drawer of a check

The plaintiff's alternate claim, relying on General Statutes § 42a-3-415, is even less persuasive. The plaintiff's complaint nowhere alleges that Horton signed the insurance premium note as an accommodation party for the corporate defendant. Far from pursuing a contrary stance at the trial court hearing, counsel for the plaintiff expressly disavowed any claim that Horton was a guarantor. That disavowal inferentially encompassed any liability that Horton might possibly be alleged to have incurred under § 42a-3-415, since "an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature." Connecticut General Statutes Annotated § 42a-3-415, comment 1 (West 1990). On this record, the plaintiff has failed to establish its entitlement to appellate review of this claim of error because the claim was not "distinctly raised at the trial." Practice Book § 4185. Adherence to this rule of practice is particularly compelling in our review of a trial court's largely discretionary disposition of an application for a prejudgment remedy.

The judgment is affirmed.

In this opinion the other justices concurred.

---

personally liable without permitting him to introduce parol evidence that he had signed the check in a representative rather than an individual capacity. The instrument in that case contained the name of the corporate debtor, albeit in a form that varied slightly from the correct corporate name. We nonetheless held that, in a plenary proceeding, the drawer was entitled to have the opportunity "to prove that the obligation to pay the check was that of the corporation." Id., 252. The case for corporate obligation is stronger on the present record because the insurance premium note not only identifies the corporate debtor correctly but designates the corporation as the maker-debtor. In *Wyandot, Inc.*, furthermore, the trial court's adverse ruling on the parol evidence issue had precluded the drawer of the check from making any record about whether the payee of the check had expected to hold the drawer personally liable for the obligation of the corporate debtor.