GAIL A. CAHALY *v.* BENISTAR PROPERTY
EXCHANGE TRUST COMPANY,
INC., ET AL.
(AC 21980)

Schaller, Flynn and Peters, Js.

Argued April 1—officially released October 29, 2002

*Richard S. Order*, with whom was *Thomas W. Edgington*, for the appellants (named defendant et al.).

*Seth Jacoby*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendants Benistar Property Exchange Trust Company (Benistar Property), Benistar, Ltd., and Daniel E. Carpenter appeal from the judgment of the trial court granting the application filed by the plaintiff, Gail A. Cahaly, for a prejudgment remedy.[1] On appeal, the defendants claim that the trial court improperly (1) granted the application because the prejudgment remedy statutes, General Statutes § 52-278a et seq., do not contemplate a plaintiff, in an out-of-state action, attaching a defendant's Connecticut assets prior to the entry of judgment in the out-of-state case, (2) denied the defendants' motion for a stay prior to the granting of the application for a prejudgment remedy,

---

[1] The plaintiff withdrew her prejudgment remedy application as to defendants Martin L. Paley and Molly Carpenter. We therefore refer to Benistar Property, Benistar, Ltd., and Daniel E. Carpenter as the defendants.

(3) granted a prejudgment remedy against Carpenter that is inconsistent with the prior orders of a Massachusetts court, and (4) granted a prejudgment remedy against Benistar, Ltd., and Carpenter without a demonstration by the plaintiff that she will have the ability to pierce the corporate veil. We affirm the judgment of the trial court.

Our review of the record, including the affidavits of the parties, discloses the following.[2] Benistar Property is a wholly owned subsidiary of Benistar, Ltd. Benistar, Ltd., maintains Connecticut offices in Stamford and Simsbury. Carpenter is the chairman and secretary of Benistar Property and the chairman and secretary of Benistar, Ltd. Carpenter is a Connecticut resident. Benistar Property was in the sole business of serving as an intermediary for like-kind exchanges of property pursuant to 26 U.S.C. § 1031 of the Internal Revenue Code.[3] Carpenter's role in Benistar Property was to manage clients' proceeds from the sales of properties until further directed by the clients to return the proceeds or to apply the proceeds to the purchase of new property.

In October, 2000, Carpenter opened two accounts, a money market account and a trading account, with PaineWebber, Inc. (PaineWebber), under the name of Benistar Property Exchange. Carpenter instructed PaineWebber that Benistar Property would wire funds into the money market account, some of which would later be transferred to the trading account. In December, 2000, the balance in the trading account fell into

---

[2] The court's memorandum of decision does not specify its findings.

[3] "Section 1031 is an exception to the general rule requiring recognition of gain or loss upon the sale or exchange of property. Under 26 U.S.C. § 1031 (a), if property held for productive use is exchanged for like-kind property, the taxable gain is not realized until the acquired property is disposed of." *American International Enterprises, Inc.* v. *Federal Deposit Ins. Corp.*, 3 F.3d 1263, 1265 n.3 (9th Cir. 1993).

a negative balance, and PaineWebber seized the money market funds to pay for the positions it covered in the trading account.

The plaintiff, in an exchange fee agreement dated November 8, 2000, had entered into a written contract with Benistar Property that provided that the plaintiff's funds would be held and invested in either a 3 percent per annum or a 6 percent per annum PaineWebber account. The 3 percent account allowed for liquidation by seventy-two hours written notice, and the 6 percent account allowed for liquidation by thirty days written notice. The plaintiff signed over a check in the amount of $2,412,230 to Benistar Property for investment. Since November 8, 2000, $1,420,000 of the plaintiff's money has been returned to her, leaving a balance of $992,230, plus interest.[4] Benistar Property failed to return these funds to the plaintiff.

In a complaint dated January 21, 2001, the plaintiff filed suit against Benistar Property, Benistar, Ltd., Carpenter, Martin L. Paley and PaineWebber in Massachusetts Superior Court. In addition to the plaintiff, there are several other plaintiffs in the Massachusetts action who claim losses totaling nearly $9 million. One of the Massachusetts defendants, PaineWebber, was not named in the Connecticut prejudgment remedy application. On February 2, 2001, the Massachusetts Superior Court granted the plaintiffs' motion for prejudgment security. As of the July 18, 2001 hearing date on the Connecticut application for prejudgment remedy, the assets secured by the Massachusetts attachment totaled only about $500,000 in value for the $9 million in claims of all plaintiffs. Additionally, they had attached a Travelers Insurance Company bond in the amount of $5 million. However, Travelers disputes its liability claiming mismanagement on the part of the insured defendants.

---

[4] The plaintiff had also agreed to pay Benistar Property a fee of $15,000. This fee has not been considered when computing the plaintiff's balance.

On January 30, 2001, the plaintiff filed an application for prejudgment remedy in the Hartford Superior Court, seeking an attachment of $1.1 million against the defendants. The defendants filed a motion to dismiss or to stay the plaintiff's application, arguing that a prejudgment attachment was improper because of the prior pending action doctrine and because there was no suit pending or contemplated in Connecticut. Following the denial of the defendants' motion to dismiss or stay the proceedings, the court held a probable cause hearing and granted the application for attachment in the amount of $500,000, with a maximum attachment against Carpenter in the amount of $250,000. This appeal followed.

I

The defendants first claim that a plaintiff in an out-of-state action is not allowed to attach a defendant's Connecticut assets by way of § 52-278a et seq. to secure a judgment that the plaintiff might receive in a sister state. That statute provides in relevant part that if, after a hearing, the court finds that there is probable cause that a judgment, in the amount of the prejudgment remedy sought, "will be rendered *in the matter* in the plaintiff's favor" which is not adequately secured by insurance, then the remedy sought, or some court ordered modification thereof, "shall be granted . . . ." (Emphasis added.) General Statutes § 52-278d (a).

Specifically, the defendants place much emphasis on the phrase *"in the matter"* contained in § 52-278d (a). They argue that the use of this phrase mandates that a lawsuit must be pending, or at least contemplated, before a Connecticut court. The defendants first made this argument to the trial court in their motion to dismiss or stay the application for prejudgment remedy as well as at the prejudgment remedy hearing. The plain lan-

guage of the statute, its legislative history and its construction in relationship to existing legislation, however, do not lend support to the defendants' contention that "a matter" must refer only to a lawsuit pending or contemplated in a Connecticut court.

When presented with an issue of statutory construction, our review is plenary. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 34, 792 A.2d 835 (2002). "In applying [the] principles [of statutory construction], we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result." *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 276, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

We first set forth the relevant portions of the prejudgment remedy statutes. General Statutes § 52-278b provides in relevant part that "no prejudgment remedy shall be available to a person in any action at law or equity (1) unless he has complied with the provisions of [this statute] or (2) for the garnishment of earnings . . . ." The statutory definition of a prejudgment remedy is contained in § 52-278a (d), which provides that a prejudgment remedy is "any remedy or combination of remedies that enables a person by way of attachment,

foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment . . . ."

General Statutes § 52-278d (a) provides in relevant part that a hearing on a prejudgment remedy "shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought . . . will be rendered in the matter in favor of the plaintiff [and] (2) whether payment of any judgment that may be rendered against the defendant is adequately secured by insurance . . . . If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court . . . ."

These prejudgment remedy proceedings "are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of that adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." *E.J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 629–30, 356 A.2d 893 (1975).

Such prejudgment security can be sought either before or after the underlying action is commenced. If such security is sought prior to commencing the under-

lying action, a claimant must attach the unsigned summons and proposed complaint to the legal process seeking the attachment and then serve it on the party against whom the attachment is sought. See General Statutes § 52-278c (a) ("any person desiring to secure a prejudgment remedy shall attach his proposed unsigned writ, summons and complaint"). While amending General Statutes § 52-278a et seq. in 1993, the legislature recognized that the typical prejudgment remedy application often is made at a preliminary stage of litigation, before a complaint is even filed. See 36 H.R. Proc., Pt. 31, 1993 Sess., pp. 11, 219–31, remarks of Representative Richard D. Tulisano; see also *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 693, 795 A.2d 1274 (2002). Our point in mentioning this is that the defendants assert that a lawsuit must be pending before a Connecticut court for a prejudgment remedy to issue. This assertion, however, is not borne out by our statutory scheme. Our law contemplates that in a typical case, one can seek a prejudgment remedy even before commencing a lawsuit.

Additionally, the defendants also argue that the statutory reference to "the matter" means that an actual lawsuit must, at the very least, be anticipated in Connecticut. By that, they mean that the actual trial on the merits must be anticipated to occur in Connecticut. This very narrow reading, however, overlooks the very purpose behind our prejudgment remedy statute. "The purpose of the prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, *should* he obtain one." (Emphasis added; internal quotation marks omitted.) *Lewis Truck & Trailer, Inc.* v. *Jandreau*, 11 Conn. App. 168, 170, 526 A.2d 532 (1987). It is "primarily designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff *may*

*recover . . . .*" (Emphasis added.) *E.J. Hansen Elevator, Inc.* v. *Stoll*, supra, 167 Conn. 629. "The adjudication made by the court on [an] application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto . . . ." Id., 628–29.

In the present case, the plaintiff has a matter pending against the defendants in Massachusetts, which can be said to be the underlying claim in which she first hopes to prevail and then to file as a foreign judgment. Both the Massachusetts court and our trial court have found probable cause that she will be successful on the merits of her claim. The plaintiffs in the Massachusetts action have already been able to attach approximately $500,000 in assets, despite nearly $9 million in alleged losses. Because of this, the plaintiff has sought to attach the Connecticut assets of the defendants to protect them from dissipation before the final adjudication of her claim.

Further, if the plaintiff is successful in the Massachusetts action, she will register that judgment in Connecticut pursuant to the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-605, which contains, in part, the procedure for filing a foreign judgment in Connecticut. Subsection (b) provides in relevant part that a "foreign judgment shall be treated in the same manner as a judgment of a court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of this state and may be enforced or satisfied in like manner." In effect, the plaintiff's Massachusetts judgment will become a Connecticut judgment, although an actual lawsuit may not be filed and litigated in Connecticut. See General Statutes § 52-605 (b).

In construing a statute, we must examine its provisions in relationship with other existing legislation, keeping in mind that the legislature, presumably, did not intend a bizarre result. See *Rafferty* v. *Noto Bros. Construction, LLC*, supra, 68 Conn. App. 690. In this instance, if we examine the provisions of our prejudgment remedy statutes, § 52-278a et seq., in relationship to the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq., we would reach a bizarre result by applying the defendants' narrow reading of our prejudgment remedy statute. If the legislature had intended to exempt a plaintiff in an out-of-state action from seeking to secure a Connecticut defendant's assets in anticipation of registering her foreign judgment, once obtained, what would be the point of registering the judgment if, before the levy on that judgment, the defendant was given the opportunity to dissipate all of its Connecticut assets that might otherwise have satisfied it? If a prejudgment attachment were not allowed, where probable cause was found and a judgment was anticipated, what would be the point of giving full faith and credit to an out-of-state judgment under the Uniform Enforcement of Foreign Judgments Act? If assets that might have satisfied that judgment are dissipated, it would be too late to make any effective use of that judgment.

To read into the prejudgment remedy statute, as the defendants would have us do, a prerequisite that the plaintiff must file a lawsuit to be tried on its merits in Connecticut, rather than in anticipation of registering a foreign judgment and enforcing its lien in Connecticut, appears to us to narrow the statute in a manner inconsistent with existing legislation and the intent of the legislature. "We are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained. . . . We will not read into clearly expressed legislation provisions which do

not find expression in its words." (Internal quotation marks omitted.) *Tower* v. *Miller Johnson, Inc.*, 67 Conn. App. 71, 78, 787 A.2d 26 (2001). The purpose of the prejudgment remedy statute is to secure the defendants' assets, forestalling the dissipation thereof, while awaiting a final judgment. We will not require the plaintiff to meet prerequisites that go beyond those specified by the statute.

Accordingly, we are not persuaded by the defendants' argument that § 52-278a et seq. prohibit a plaintiff in an out-of-state matter from securing the Connecticut assets of the defendants when that plaintiff anticipates filing her out-of-state judgment in Connecticut. If, as the defendants claim, the statute were to be interpreted to require the plaintiff to wait until judgment is rendered in Massachusetts before seeking a prejudgment remedy in Connecticut, the defendants would have the ability to dispose of their Connecticut assets in anticipation of an out-of-state judgment being filed in Connecticut. Such a reading of the statute completely contravenes its clear purpose of bringing the defendants' assets into the custody of the law as security for the satisfaction of a potential judgment.

We conclude that the court correctly held that our prejudgment remedy statute does not contain a blanket prohibition that bars an out-of-state plaintiff from pursuing a prejudgment remedy of attachment for the purpose of securing assets held in Connecticut while awaiting a final judgment in a sister state.

II

The defendants next claim that the court abused its discretion by not granting the defendants' motion for a stay *prior* to the granting of the application for a prejudgment remedy, invoking, inter alia, the prior pending action doctrine.

"A hearing on an application for prejudgment remedy is not a full-scale trial on the merits of the [plaintiff's] claims . . . but rather concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action." (Internal quotation marks omitted.) *Soltesz* v. *Miller*, 56 Conn. App. 114, 116, 741 A.2d 335 (1999). "Appellate review of a trial court's broad discretion to deny or grant a prejudgment remedy is limited to a determination of whether the trial court's rulings constituted clear error." *State* v. *Ham*, 253 Conn. 566, 568, 755 A.2d 176 (2000). "It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim. We decide only whether the determination of the trial court constituted clear error." *Greenberg, Rhein & Margolis, Inc.* v. *Norris-Faye Horton Enterprises, Inc.*, 218 Conn. 162, 166, 588 A.2d 185 (1991).

"The legal idea of probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Emphasis in original; citation omitted; internal quotation marks omitted.) *Three S. Development Co.* v. *Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984).

We note, however, that insofar as the defendants invoke the prior pending action doctrine as grounds for a stay, application of that legal doctrine to a given set of facts set out in a pleading involves our plenary review. *O'Halloran* v. *Charlotte Hungerford Hospital*, 63 Conn. App. 460, 463, 776 A.2d 514 (2001).

The defendants claim that the trial court improperly denied their motion to dismiss or stay the proceedings *prior* to the hearing on the application for prejudgment remedy.[5] They first argue that the application was duplicative under the prior pending action doctrine.[6]

"The prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction. . . . We must examine the pleadings to ascertain whether the actions are *virtually alike* . . . and whether they are *brought to adjudicate the same underlying rights*." (Emphasis in original; internal quotation marks omitted.) *Sandvig* v. *A. Dubreuil & Sons, Inc.*, 68 Conn. App. 79, 87, 789 A.2d 1012, cert. granted on other grounds, 260 Conn. 931, 799 A.2d 296 (2002).

---

[5] In their brief, the defendants claim that "[t]he present case is a perfect example of a situation in which the court should have exercised its discretion and granted a stay of its proceedings in favor of a prior action in a foreign jurisdiction."

[6] The defendants also argue that the application for prejudgment remedy was premature under the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq. The defendants, however, make nothing more than a statement to that effect. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citations omitted; internal quotation marks omitted.) *Ferrara* v. *Hospital of St. Raphael*, 54 Conn. App. 345, 351, 735 A.2d 357, cert. denied, 251 Conn. 916, 740 A.2d 864 (1999). Accordingly, we deem the issue abandoned and decline the opportunity to review it.

In this case, the plaintiff's application for prejudgment remedy and the plaintiff's Massachusetts action, obviously, are not brought in the same jurisdiction. The actions are not virtually alike. The Massachusetts complaint brought by the plaintiff was brought against five defendants: Benistar Property, Benistar, Ltd., Paley, Carpenter and PaineWebber. It was brought in eight counts: breach of an exchange agreement against Benistar Property and Benistar, Ltd.; breach of fiduciary duty against Benistar Property, Benistar, Ltd., Paley and Carpenter; fraud against Benistar Property, Benistar, Ltd., Paley and Carpenter; accounting against Benistar Property, Benistar, Ltd., Paley, Carpenter and Paine-Webber; unfair trade practices, pursuant to Mass. General Laws c. 93A, § 11, against Benistar Property, Benistar, Ltd., Paley and Carpenter; conversion against Benistar Property, Benistar, Ltd., Paley and Carpenter; conversion against PaineWebber; and trustee process and reach against PaineWebber pursuant to Mass. General Laws c. 246, § 1, and Mass. General Laws c. 214, § 3 (6).[7] The Massachusetts complaint seeks several ex parte orders and attachments as well as a judgment for approximately $1 million plus consequential damages, interest, fees and expenses.

The unsigned Connecticut complaint, attached to the prejudgment remedy application, contained only one count: collection, enforcement and securing of a debt. The plaintiff requested damages that are consistent with the orders of the Massachusetts court, costs, interest, fees and "such other and further relief as to equity may pertain." In her unsigned complaint, the plaintiff explained that she hoped to secure a judgment in her Massachusetts action and that the defendants' debt was unsecured and potentially uninsured. In her prejudgment remedy application, the plaintiff stated that there

---

[7] The plaintiff refers to Benistar Property and Benistar, Ltd., jointly as Benistar.

was probable cause that she would succeed in her Massachusetts suit and that she was seeking to secure $1.1 million of the defendants' assets to secure their debt.

The plaintiff filed her prejudgment remedy application with the goal of attaching the Connecticut assets of the defendants to protect those assets from dissipation before the final adjudication of her Massachusetts action; her ultimate goal is to succeed in the Massachusetts litigation and to register that judgment here. She admits that she has no intention of actually litigating her claim in Connecticut. She seeks to bring Connecticut assets not reached by the Massachusetts prejudgment procedures into the custody of the law to be held as security for the satisfaction of her potential Massachusetts judgment, which will, in effect, become a Connecticut judgment once registered here.

For all of these reasons, we conclude that the Massachusetts action and the Connecticut action, although based on the same underlying facts, are not virtually alike; the one is in aid of the other. The plaintiff seeks actually to litigate her claims in the Massachusetts action, where she merely seeks to secure the defendants' Connecticut assets by way of her Connecticut prejudgment remedy application. Accordingly, the prior pending action doctrine is inapplicable to this case.

### III

The defendants next claim that the court abused its discretion by granting a prejudgment remedy against Carpenter that is inconsistent with the prior orders of the Massachusetts court. They argue that the court committed clear error by granting a prejudgment remedy of attachment against Carpenter when the Massachusetts court did not do so. We do not agree.

In assessing the appropriateness and scope of a prejudgment remedy, it is the role of the court to evaluate

the arguments and evidence produced by both parties in order to determine whether sufficient probable cause exists to sustain the plaintiff's claim. See *Greenberg, Rhein & Margolis, Inc.* v. *Norris-Faye Horton Enterprises, Inc.*, supra, 218 Conn. 166; *East Lyme* v. *Wood*, 54 Conn. App. 394, 396, 735 A.2d 843 (1999).

In this case, after a hearing, the court specifically found that there was probable cause to believe that the plaintiff's action would be successful against all three defendants. The court clearly weighed the evidence and evaluated the arguments, and we presume no error in its performance of that function. See *Solomon* v. *Aberman*, 196 Conn. 359, 376–77, 493 A.2d 193 (1985). The trial court was not bound by the ruling of the Massachusetts court, as this was only one piece of evidence for the court's consideration. At the prejudgment remedy hearing, the court explained that there could be many reasons why the Massachusetts court may not have issued an attachment against Carpenter, and the court stated that it would not merely assume that the reason was based on the merits of the plaintiffs' claim. The court also noted that one reason for denying a prejudgment remedy simply could have been the lack of attachable assets.

A trial court does not abuse its discretion simply by weighing one piece of evidence less heavily than one of the parties would like. We conclude that the court did not abuse its discretion by granting a prejudgment remedy against Carpenter that was inconsistent with the prior orders of the Massachusetts court, those orders being only one piece of evidence on which the court relied in making its finding of probable cause.

IV

The final claim of the defendants is that the trial court abused its discretion by granting a prejudgment remedy against Benistar, Ltd., and Carpenter without a demon-

stration by the plaintiff that she will have the ability to pierce the corporate veil. Specifically, the defendants argue that the plaintiff produced no evidence that Benistar Property and Benistar, Ltd., intermingled funds or confused their corporate identities to the point where third parties did not know with which entity they were dealing; the plaintiff's complaint simply treats Benistar Property and Benistar, Ltd., as a single entity when, in fact, they are not a single entity.

Keeping in mind our limited standard of review, we look to the defendants' claim that the court committed clear error in finding probable cause to pierce the corporate veil.

The Supreme Judicial Court of Massachusetts has stated that the corporate veil should be pierced only "(a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control in the activities of another, and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 619, 233 N.E.2d 748 (1968). The court also addressed the personal liability of a shareholder or other person in control of a corporation, stating that a "person controlling a corporation and directing, or participating actively in . . . its operations may become subject to civil or criminal liability on principles of agency or of causation." (Citation omitted.) Id., 618.

Our Supreme Court has held that we may "disregard the fiction of a separate legal entity to pierce the shield

of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." (Internal quotation marks omitted.) *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, 187 Conn. 544, 552, 447 A.2d 406 (1982). Additionally, the court has "affirmed judgments disregarding the corporate entity and imposing individual stockholder liability when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." Id., 553.

Two theories for piercing the corporate veil are employed in Connecticut, the identity rule and the instrumentality rule. Id., 553–54. "The identity rule primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities." Id., 560. The court in *Angelo Tomasso, Inc.*, explained that this "identity rule" is what was employed by the Massachusetts court in *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, supra, 353 Mass. 614, the seminal case in Massachusetts. See *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, supra, 187 Conn. 560 n.10.

"The identity rule has been stated as follows: If [a] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Internal quotation marks omitted.) Id., 554.

The evidence presented to the trial court at the hearing on the prejudgment remedy application included the following. Benistar Property is a wholly owned subsidiary of Benistar, Ltd. The plaintiff was directed to the Benistar.com web site, which portrays Benistar, Ltd., as part of Benistar Property, the largest 419 trust plan administrator in the country. The web site continually uses the representation that "we," to wit, Benistar Property and Benistar, Ltd., do various things. Benistar, Ltd.'s bond, issued by Travelers Property Casualty, also covered Benistar Property. Moreover, various facsimiles were submitted as evidence. These facsimiles were sent from Benistar Property to Benistar, Ltd., directing that checks be cut or money be wired related to the plaintiff's account. Additionally, evidence of Carpenter's involvement included the following. Carpenter is the chairman and secretary of both Benistar Property and Benistar, Ltd. Carpenter's role in Benistar Property was to manage clients' money. Carpenter, himself, opened the two PaineWebber accounts and instructed PaineWebber that he would be making transfers between these accounts. Carpenter, himself, did make various transfers between these accounts.

It is the function of the trial court to weigh the evidence. In this case, after reviewing the evidence before it, the court found that the plaintiff had met her burden of proof that there was probable cause to pierce the corporate veil. Having considered the arguments and briefs of counsel, together with the transcript and the record, we find that the conclusions of the court were reasonable, well within its discretion and not clearly erroneous.

The judgment is affirmed.

In this opinion PETERS, J., concurred.

SCHALLER, J. concurring. Although I agree with the majority that the order of the trial court granting the

prejudgment remedy should be affirmed, I write separately to clarify what I believe is the principal issue on which our analysis should focus in resolving this appeal.

The defendants assert, as their principal claim, that the trial court improperly determined that the plaintiff was entitled to a prejudgment remedy in Connecticut when the only relief she seeks in Connecticut is the prospective future enforcement of an out-of-state judgment not yet obtained. That claim is restated by the majority as a claim that "a plaintiff in an out-of-state action is not allowed to attach a defendant's Connecticut assets by way of General Statutes § 52-278a et seq. to secure a judgment that the plaintiff might receive in a sister state." My concern is that the restatement of the claim and the analysis that follows may not reflect clearly what we decide here today.

In that regard, it is important to note that the issue is not whether Connecticut will allow a prejudgment remedy to secure an out-of-state judgment. The broad issue, rather, is whether a prejudgment remedy can be granted to secure a *Connecticut judgment* that is based on a foreign judgment and that will come into existence only after the out-of-state judgment is obtained. The more precise issue is whether the prejudgment remedy statutes are satisfied by attaching to the application an unsigned writ of summons and complaint that constitute a prospective action in Connecticut that will be brought to enforce a foreign judgment, prior to the foreign judgment's having been obtained.

The majority concludes, and I agree, that attaching the unsigned writ of summons and complaint to the prejudgment remedy application in Connecticut does satisfy the prejudgment remedy statutes. The prejudgment remedy statutes do not contain any provision that prohibits the bringing of the Connecticut prejudgment remedy application on the basis of a prospective action

to enforce the judgment prior to the obtaining of the foreign judgment. It is unquestionable that the Connecticut action ultimately will serve to enforce the foreign judgment and need not be pending at the time the prejudgment remedy is sought. General Statutes § 52-278c (a). Accordingly, the prejudgment remedy statutes are properly invoked in connection with, not an out-of-state judgment, but a prospective Connecticut judgment.

Although the majority appears to assume that a filing of the Massachusetts judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq., ultimately will be used to obtain the Connecticut judgment, the plaintiff in this case has attached to her prejudgment remedy application a complaint that constitutes not a filing of a foreign judgment, but a separate Connecticut action based on the foreign judgment. The remedy of an action on the judgment, of course, survives the Uniform Enforcement of Foreign Judgments Act; see General Statutes § 52-607; and so it is a proper cause of action, despite the more expeditious filing procedure provided by General Statutes § 52-605. Because the plaintiff has provided the unsigned writ of summons and complaint for a separate Connecticut action, some of the problems addressed by the majority do not exist.

Although the trial court did virtually no fact-finding in this case, it did find probable cause that the plaintiff will prevail in Massachusetts, and it appears to be undisputed that the plaintiff eventually will seek to obtain a Connecticut judgment, by one means or another, after obtaining the Massachusetts judgment. Although the plaintiff now represents that she will pursue her unsigned complaint in an action on the foreign judgment, she eventually may determine that filing pursuant to the Uniform Enforcement of Foreign Judgments Act is the most suitable course to follow. All the requirements, therefore, are met for the issuance of the pre-

judgment remedy. I believe that many of the arguments raised to support the result by the majority are unnecessary and need not be addressed here. I agree with the majority's resolution of the remaining claims on appeal.

For those and other reasons, I respectfully concur.