MARLIN BROADCASTING, LLC *v.* LAW OFFICE OF KENT AVERY, LLC, ET AL.
(AC 27550)

McLachlan, Lavine and Peters, Js.

Argued February 20—officially released June 12, 2007

*Kent Avery*, for the appellants (defendants).

*Kevin M. Ahern*, with whom, on the brief, were *Julia B. Morris* and *Sandi Beth Girolamo*, for the appellee (plaintiff).

McLACHLAN, J. The defendants, the Law Office of Kent Avery, LLC (law firm), and Kent Avery, appeal from the judgment of the trial court granting the plaintiff's application for a prejudgment remedy as to both defendants in the amount of $35,250. On appeal, the defendants claim that the court improperly (1) denied their request to dismiss the application for lack of subject matter jurisdiction on the ground that the plaintiff lacked standing to bring the action, (2) awarded a prejudgment remedy against Avery and (3) did not assign the proper weight or apply the correct standard to the defendants' defenses. We affirm the judgment of the trial court.

This case arises out of a contractual dispute between the defendants and a local radio station, WCCC-FM, 106.9 "The Rock" (WCCC), for the defendants' nonpayment of on air advertisement services. On February 18, 2006, the plaintiff, Marlin Broadcasting, LLC, pursuant to General Statutes § 52-278c, filed an application for a prejudgment remedy against the defendants with supporting documentation. In the complaint, which was attached to the prejudgment remedy application, the plaintiff alleged breach of contract as to the law firm and unjust enrichment and quantum meruit as to both defendants.

According to the affidavit in support of the prejudgment remedy application, WCCC is an affiliate of the plaintiff. As set forth in the complaint, Avery is the sole attorney member and principal of the law firm. The plaintiff alleged that between the period of July 14, 2004, through June 14, 2005, Avery, on behalf of the law firm, entered into a series of contracts with the plaintiff, under which the defendants agreed to pay the plaintiff to air commercials advertising the law firm. The plaintiff provided these services to the defendants

between approximately July, 2004, and November, 2005. The plaintiff alleged that the defendants owe an outstanding balance of $35,250, which they have failed to pay, in breach of these contracts.

On April 3, 2006, the matter came before the court for a hearing on the plaintiff's application for the prejudgment remedy. Mark Savage, an account executive for WCCC, and Kathy Ann Roche, WCCC's business manager, testified for the plaintiff. Demetra Giatas, general office manager for the law firm, testified for the defendants. The court also admitted various exhibits, including the contracts entered into by the parties, as well as invoices documenting services rendered by WCCC to the defendants, and text versions of the on air advertisements and correspondence between the parties. At the hearing, the defendants also filed a memorandum of law in opposition to the application for the prejudgment remedy setting forth various defenses and arguing that, even if probable cause supported the application, any prejudgment remedy award take into account these defenses.

At the conclusion of the hearing, the court, after discussing the defendants' defenses, issued an oral decision finding that the plaintiff had established, by probable cause, that a judgment should be rendered in the plaintiff's favor in the amount of the prejudgment remedy sought and granting the plaintiff's application. The court ordered the defendants to post a bond in the amount of $35,250 by April 24, 2006. This appeal followed.[1]

I

We first address the defendants' claim of lack of standing, as this claim presents a question of the trial

---

[1] Pursuant to General Statutes § 52-278*l* (a), the granting of a prejudgment remedy is a final judgment for purposes of appeal.

court's subject matter jurisdiction. See *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988) ("once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case" [citations omitted; internal quotation marks omitted]). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Cardi Materials Corp.* v. *Connecticut Landscaping Bruzzi Corp.*, 77 Conn. App. 578, 581, 823 A.2d 1271 (2003). The scope of review of a trial court's factual decisions related to the issue of standing on appeal is limited to a determination of whether they are clearly erroneous in view of the evidence and pleadings. *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 374, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991).

"Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words statutorily aggrieved, or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty,

that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 538, 893 A.2d 389 (2006).

The defendants' first argument related to standing is evidentiary. The defendants claim that the court improperly permitted Roche to testify regarding the corporate relationship between WCCC and the plaintiff without an adequate foundation. According to the defendants, because Roche's improper testimony was the only evidence that established a nexus between the plaintiff and WCCC, the court improperly determined that the plaintiff had standing to bring the matter. We disagree.

"We review evidentiary claims pursuant to an abuse of discretion standard. Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *Stanley* v. *Lincoln*, 75 Conn. App. 781, 785, 818 A.2d 783 (2003).

Roche testified that she is the business office manager at "WCCC, Marlin Broadcasting," and that she has held that position for more than three and one-half years. In this position, Roche testified, she manages various financial tasks for the plaintiff and created the filing system at WCCC. She also testified that she had twenty-five years of prior experience as a bookkeeper for various companies. Although the defendants objected on foundation grounds when the plaintiff sought to introduce this testimony, they failed to request permission to conduct a voir dire examination

of Roche or further seek to develop the record on cross-examination with respect to Roche's basis of knowledge for testifying regarding the relationship between WCCC and the plaintiff. On the basis of Roche's testimony regarding her knowledge and experience, we conclude that the court's decision to permit Roche to testify about the business relationship between the plaintiff and WCCC does not constitute a manifest abuse of discretion.

The defendants' second argument in the context of their standing claim is that the court improperly determined that the plaintiff could assert the claims of WCCC. The defendants cite *Cardi Materials Corp.* v. *Connecticut Landscaping Bruzzi Corp.*, supra, 77 Conn. App. 578, for the proposition that a corporation lacks standing to assert claims on behalf of an affiliate corporation. In *Cardi Materials Corp.*, the defendant challenged the standing of the plaintiff, Cardi Materials Corporation, to sue on a contract entered into by an affiliate, Cardi Corporation, *a distinct corporate entity*. Id., 580. We vacated the judgment of the trial court and remanded the case with direction to dismiss the action on the ground that the plaintiff, a separate and distinct entity that was not a party to the contract, did not have a specific, personal and legal interest in the matter.[2] Id., 581–82. In doing so, we noted that "[n]o evidence was produced at trial that demonstrated any specific, personal and legal interest in the contract by the plaintiff." Id., 582 n.3.

---

[2] *Cardi Materials Corp.* is aligned with case law setting forth the general proposition that a parent corporation cannot create a subsidiary and then ignore its separate corporate existence whenever it would be advantageous to the parent. See *Bross Utilities Service Corp.* v. *Aboubshait*, 618 F. Sup. 1442, 1445 (S.D.N.Y. 1985); see also *Carey* v. *National Oil Corp.*, 592 F.2d 673, 676 (2d Cir. 1979); *In re Beck Industries, Inc.*, 479 F.2d 410, 418 (2d Cir. 1973); *Pennsylvania Engineering Corp.* v. *Islip Resource Recovery Agency*, 710 F. Sup. 456, 465 (E.D.N.Y. 1989).

Unlike the situation in *Cardi Materials Corp.*, in the present matter, we are unable to discern from the limited record before us that the plaintiff and WCCC are separate and distinct legal entities. To the contrary, there was direct testimony that the two businesses are not separate entities.[3] Moreover, the plaintiff presented evidence that it suffered direct injury by way of economic losses in the amount of $35,250 from outstanding invoices that the defendants have failed to pay to the plaintiff. Relying on this evidence, the court properly found that the plaintiff had standing to pursue the matter. On the basis of the evidence set forth in the record, we conclude that the court's factual findings were not clearly erroneous and that its ultimate conclusion was legally and logically correct.

II

The defendants next claim that the court improperly determined that Avery, as a member of the law firm, a limited liability company, could be held personally liable to the plaintiff under the theories of unjust enrichment and quantum meruit. The defendants argue that the plaintiff did not allege a piercing of the corporate veil and that Avery was therefore shielded from personal liability. See General Statutes § 34-133 (a).[4] The

[3] Roche testified, for example, that she was employed by, "WCCC, Marlin Broadcasting." On cross-examination, the following occurred:

"[The Defendants' Counsel]: [W]ith regard to WCCC, you said it was [a] wholly owned subsidiary. What do you mean?

"[The Witness]: "WCCC —Marlin Broadcasting owns all of the assets and liabilities of WCCC.

"[The Defendants' Counsel]: [W]hen you say subsidiary, you don't mean a separate entity.

"[The Witness]: "No.

"[The Defendants' Counsel]: There is no separate entity, WCCC?

"[The Witness]: No."

[4] General Statutes § 34-133 (a) provides: "Except as provided in subsection (b) of this section, a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in

plaintiff argues that notwithstanding Avery's status as a member of a limited liability company, the advertisements, which solicited direct contact with Avery and repeatedly broadcast his name and personal experience, thereby allowing potential customers to become familiar with him in his individual capacity, unjustly conferred a personal benefit on him to the detriment of the plaintiff. As such, the plaintiff argues that the court properly determined that probable cause existed that a judgment will be rendered in the matter in favor of the plaintiff against Avery.

At the outset, we emphasize that "prejudgment remedy proceedings are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of that adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." (Internal quotation marks omitted.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, 73 Conn. App. 267, 273, 812 A.2d 1 (2002), rev'd on other grounds, 268 Conn. 264, 842 A.2d 1113 (2004). This limited evidentiary proceeding contrasts sharply with, for example, the detailed and substantive arguments and conclusions that must be addressed in a motion to strike. See *William Beazley Co.* v. *Business Park Associates, Inc.*, 34 Conn. App. 801, 805, 643 A.2d 1298 (1994).

"The purpose of the prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, *should* he obtain one. . . . It is primarily designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of

contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company."

such judgment as the plaintiff *may recover* . . . . The adjudication made by the court on [an] application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, supra, 73 Conn. App. 274–75.

"General Statutes § 52-278d (a) provides in relevant part that a hearing on a prejudgment remedy shall be limited to a determination of . . . whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . . If the court, upon consideration of the facts before it and taking into account any . . . [defenses] . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court." (Internal quotation marks omitted.) *Benton* v. *Simpson*, 78 Conn. App. 746, 750–51, 829 A.2d 68 (2003).

"The legal idea of probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . .

"This court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 752.

In its oral ruling on the plaintiff's application for a prejudgment remedy, the court noted that the probable cause standard is very low. In granting the application as to Avery, the court found, inter alia, that the evidence supported the plaintiff's claim that the advertisements benefited him in his personal capacity, as well as the law firm. The court did not articulate specifically what bearing this finding had on either the plaintiff's claim for unjust enrichment or quantum meruit.[5]

Quantum meruit and unjust enrichment are common-law principles of restitution that are noncontractual means of recovery without a valid contract. *Sidney* v. *DeVries*, 215 Conn. 350, 351 n.1, 575 A.2d 228 (1990). Consistent with the principles of equity, unjust enrichment is a broad and flexible remedy. *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994). A plaintiff seeking recovery for unjust enrichment must prove "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the [plaintiff] for the benefits, and

---

[5] The defendants have not requested any such articulation.

(3) that the failure of payment was to the [plaintiff's] detriment." (Internal quotation marks omitted.) Id.

In arguing that the court's ruling was improper, the defendants concede that a benefit was conferred on them and presented no evidence to dispute that the outstanding balance of $35,250 had not been paid. Nonetheless, the defendants argue that any benefit to Avery, who could not be held personally liable on the contracts, was incidental to the contracts and that justice should not require him to compensate the plaintiff for such a benefit. See *Chatfield* v. *Fish*, 126 Conn. 712, 10 A.2d 754 (1940) (no equitable ground on which plaintiff could recover in quasi-contract against defendant lessor after plaintiff provided services and furnished materials to occupant of certain property and later sought compensation from lessor who knew services were being rendered and material furnished to benefit of property). The defendants further argue that the plaintiff, having contracted directly with the law firm without obtaining a personal guarantee from Avery and having failed to allege facts supporting a piercing of the corporate veil, cannot now circumvent the liability shields established by law to protect Avery. Thus, the defendants argue that under the plaintiff's theory of unjust enrichment, an individual member of a single member limited liability company would always be held personally liable for advertising services, which would eviscerate the liability protections afforded by § 34-133 (a). Finally, the defendants argue that Avery, an attorney bound by Connecticut's Rules of Professional Conduct, is professionally required to state his name in any advertisement and that it would be inequitable to impose liability on him individually merely for complying with the Rules of Professional Conduct. See Rules of Professional Conduct 7.2 (d).[6] We disagree.

---

[6] Rule 7.2 (d) of the Rules of Professional Conduct provides in relevant part: "Any advertisement or communication made pursuant to this Rule shall include the name of at least one lawyer admitted in Connecticut responsible for its content. . . ."

At the hearing, the plaintiff presented evidence that the advertisements personally benefited Avery and that such a benefit was not derived solely by virtue of the fact that he is a member of the law firm. Specifically, the plaintiff presented uncontested evidence that the radio advertisements featured the voice of Avery and directed prospective customers to contact directly "defense attorney Kent Avery." The advertisements further stated that "Kent Avery knows the laws concerning license suspension appeals." On the basis of this evidence, the court reasonably could have concluded that, for the purposes of granting the application for a prejudgment remedy, the advertisements conferred a direct benefit on Avery in his individual capacity and go beyond the disclosure required by the Rules of Professional Conduct.

The court's conclusion that probable cause supported the finding that Avery received a benefit in his individual capacity does not end the inquiry, however, as the plaintiff must still make a showing that the enrichment was unjust. See Restatement of Restitution § 1, comment (c), p. 13 (1937) ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor."). Here, the plaintiff presented evidence of Avery's direct involvement through all stages of the business relationship between the parties, including evidence that Avery played an integral part in creating the advertisements that benefited him personally. See *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 284 n.4 (pertinent facts relevant to defendant's liability for unjust enrichment included defendants' direct involvement in placing and

design of advertising program). The court made no specific finding as to whether Avery was acting in his individual capacity or as an agent of the law firm, and the defendants did not request an articulation to clarify the basis of the court's ruling. See Practice Book § 66-5. Accordingly, we will not presume that the court acted improperly, and, therefore, we cannot conclude that the court improperly determined that probable cause supported the imposition of liability on Avery as a personal beneficiary of the agreements.

Thus, we conclude that at this stage of the proceeding and based on the limited record before the court, it reasonably could have concluded that the evidence established that the defendants unjustly did not pay the plaintiff for the advertisements to the plaintiff's detriment. Essentially, the plaintiff presented evidence that Avery received a benefit, separate and distinct from the benefit conferred on the law firm, without paying for it. For these reasons, it was not improper for the court to attach the assets of Avery on the basis of the evidence and allegations in the complaint. Thus, we conclude that the court's findings are not clearly erroneous and that there was probable cause to attach the assets of Avery on the basis of our review of the transcript of the hearing and the exhibits.[7]

---

[7] We note that neither the complaint nor the evidence that was presented in a limited fashion at the hearing allege or demonstrate that the plaintiff was mistaken or that Avery somehow misrepresented or implied that he was personally liable on the contract. See, e.g., *Chatfield* v. *Fish*, supra, 126 Conn. 713 ("There was no mistake on the part of the plaintiff in rendering the services to and upon the credit of [a third party], or any other equitable ground upon which he can found a right to recover in quasi-contract. [The plaintiff] voluntarily chose to proceed at the request of [the third party], without thought of liability on the defendant's part. If the defendant was enriched by the services rendered and materials furnished, she has not been enriched under such circumstances that she ought equitably to be required to compensate the plaintiff.").

Because a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action, however, we render no opinion in this decision as to whether the plaintiff's equitable cause of action against Avery will falter at a later juncture. Further, we do

## III

Finally, the defendants claim that the court assigned an improper weight and applied an incorrect standard to their defenses. At oral argument before this court, the defendants conceded that they could cite no specific portion of the court's oral ruling to support their argument. Rather, the defendants rely on the bald assertion that had the court applied the correct standard, they would have prevailed on some of their defenses.

"It is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . [or] to clarify the legal basis of a ruling . . . . In the absence of any such attempts, we decline to review this issue." (Internal quotation marks omitted.) *State* v. *Hunter*, 99 Conn. App. 736, 743, 916 A.2d 63 (2007).

Here, the defendants failed to seek an articulation from the trial court with respect to whether the court applied the appropriate standard. Because the defendants failed to attempt to clarify the court's ruling, we decline to review the issue.

The judgment is affirmed.

In this opinion the other judges concurred.

---

not decide that the plaintiff could recover against Avery on equitable grounds in the event that the plaintiff is successful in the breach of contract cause of action against the law firm. See *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 284 ("lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment").