GERALDINE BENTON ET AL. *v.* GARY SIMPSON
(AC 22674)

Lavery, C. J., and West and DiPentima, Js.

Argued June 5—officially released August 19, 2003

*Jeffrey R. Babbin,* with whom was *Kim E. Rinehart,* for the appellant (defendant).

*William B. Barnes,* for the appellees (named plaintiff et al.).

*Opinion*

DIPENTIMA, J. The defendant, Gary Simpson, appeals from the judgment of the trial court granting the application for a prejudgment remedy[1] filed by the plaintiffs Geraldine Benton, Pat Buonincontra, Kim

---

[1] The granting or denial of a prejudgment remedy is deemed a final judgment for purposes of appeal. General Statutes § 52-278*l* (a).

Cifatte and Donna Moore.[2] On appeal, the defendant claims that the court improperly (1) held that the plaintiffs had established probable cause to show intentional infliction of emotional distress, (2) granted the prejudgment remedy without making an individualized determination of damages for each plaintiff and (3) ordered a prejudgment remedy without consideration of his counterclaims. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant was the manager of the ECO cartridge program in the office systems division of Pitney Bowes, Inc., in Trumbull. ECO program employees conduct after-market sales. The defendant had managed that department and its employees from its inception in 1995 until August 1, 2001. On January 29, 2001, Moore was hired as the sales supervisor of the ECO sales department, and she reported directly to the defendant.

Benton, Buonincontra and Cifatte were responsible for telephone sales and were required to satisfy a quota specified by the defendant. Those plaintiffs reported directly to the defendant until August 1, 2001, after which date they reported to Moore. The plaintiffs worked in cubicles that were close in proximity to each other and to the defendant's office.

In a three count complaint dated August 23, 2001, the plaintiffs alleged, inter alia, intentional infliction of emotional distress. On August 23, 2001, the plaintiffs also filed an application for a prejudgment remedy seeking to attach sufficient property of the defendant to

---

[2] This appeal concerns only the four plaintiffs who testified at the hearing on the application and were awarded the prejudgment remedy. References in this opinion to the plaintiffs, therefore, designate only those plaintiffs concerned with this appeal and excludes Debra Cosentino, a fifth plaintiff named in the complaint.

secure a monetary award of $500,000.[3] The defendant filed a motion to dismiss the plaintiffs' application, which the court denied. Following the denial of the defendant's motion to dismiss, the court conducted an evidentiary hearing on September 24 and 27, 2001. The court heard testimony from four of the five plaintiffs. The fifth plaintiff, Debra Cosentino, also applied for the prejudgment remedy, but did not testify at the hearing and was not awarded a prejudgment remedy.

The court relied on the following facts when it granted the prejudgment remedy. Benton testified that she witnessed the defendant lose his temper six to nine times, including instances such as the following: The defendant displayed anger at her yearly review; used profanity; banged on a filing cabinet; publicly admonished another plaintiff; and made the statements: "You women make me sick, you're like a cancer," and, "Geri, you have Alzheimer's [disease]."

Moore testified that she heard the defendant describe the plaintiffs as a "cancer." Additionally, when Moore disagreed with the defendant's assessment of the plaintiffs, he made the statement: "Donna, you are straddling the fence, you will be sore, may even have to take a hot bath tonight."

Cifatte testified about incidents of being belittled by the defendant and stated that he would get "in your face" or "in your space." At one point, Cifatte relayed to the defendant that her computer was inoperable, and the defendant responded, "Kim, I am so goddamned sick of hearing about your goddamned computer, if I

---

[3] The plaintiffs alleged three claims in the complaint: intentional infliction of emotional distress, negligent infliction of emotional distress and invasion of privacy. Subsequent to the granting of the prejudgment remedy but prior to the defendant's appeal, the plaintiffs abandoned count two in light of *Perodeau* v. *Hartford*, 259 Conn. 729, 792 A.2d 752 (2002). The plaintiffs did not pursue a prejudgment remedy with respect to the claim of invasion of privacy.

could shit you out a computer I would." Cifatte testified that the defendant then hit a file cabinet and stated, " 'let's take this into my office now.' " The defendant on a separate occasion made the statement to Cifatte, "You women make me sick, you disgust me, I feel sorry for anybody that has to work for you."

Buonincontra testified that she was present at a meeting where the defendant described the plaintiffs as a "cancer." She further witnessed the defendant bang his fist to make a point and was a party to an exchange with the defendant when he followed her as she walked away from him and shouted at her.

The court found that those incidents caused emotional stress for each individual plaintiff. The court granted the application ordering an attachment on the equity in the defendant's home in the amount of $25,000 for each plaintiff, Benton, Buonincontra, Cifatte and Moore. This appeal followed.

I

The defendant first claims that the court improperly found that there was probable cause to grant the prejudgment remedy on two different grounds. First, the defendant argues that the court used an improper legal standard when it evaluated the plaintiffs' claims. Second, the defendant argues that the court acted improperly in finding probable cause to grant the prejudgment remedy in that his conduct was not extreme and outrageous. As a subordinate argument to the second ground, the defendant argues that it would be contrary to public policy to award a prejudgment remedy in the workplace setting. We address each argument in turn.

At the outset, we set forth the relevant portions of the prejudgment remedy statutes. General Statutes § 52-278d (a) provides in relevant part that a hearing on a prejudgment remedy "shall be limited to a determina-

tion of . . . whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . . If the court, upon consideration of the facts before it and taking into account any . . . counterclaims . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court. . . ."

The role of the trial court in considering an award of a prejudgment remedy is well established. "Pursuant to our prejudgment remedy statutes . . . the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . . The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities." (Citations omitted; internal quotation marks omitted.) *Bank of Boston Connecticut* v. *Schlesinger*, 220 Conn. 152, 156, 595 A.2d 872 (1991).

Prejudgment remedy proceedings "are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of that adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law

pending adjudication of the merits of that action." (Internal quotation marks omitted.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, 73 Conn. App. 267, 273, 812 A.2d 1, cert. granted on other grounds, 262 Conn. 925, 814 A.2d 378 (2002), quoting *E.J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 629–30, 356 A.2d 893 (1975).

"The legal idea of probable cause is a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Three S. Development Co.* v. *Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984).

"This court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses." (Internal quotation marks omitted.) Id., 176. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 301, 685 A.2d 305 (1996).

A

The defendant first argues that the court used an improper legal standard when it evaluated the plaintiffs'

claims. Specifically, the defendant asserts that each plaintiff was required to demonstrate probable cause to sustain an individual claim against him for intentional infliction of emotional distress. The defendant argues that the court should not have granted a prejudgment remedy because the plaintiffs failed to demonstrate those individualized claims, and the court improperly considered his conduct toward the plaintiffs in the aggregate. Applying the requisite limited scope of review, we conclude that the claim must fail.

The law relevant to an allegation of intentional infliction of emotional distress provides the following: "[F]or the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." (Internal quotation marks omitted.) *Carnemolla* v. *Walsh*, 75 Conn. App. 319, 331–32, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003).

In this case, the plaintiffs claim that the defendant's conduct toward individual plaintiffs constituted intentional infliction of emotional distress with respect to those plaintiffs who witnessed the defendant's actions. After evaluating each plaintiff's testimony at the hearing, including evidence of depression, anxiety and other

serious physical conditions associated with stress, the court found that the evidence suggested that each individual plaintiff had experienced emotional distress. Thus, the court did evaluate probable cause with respect to each plaintiff. The court concluded that "there is probable cause to believe that a judgment will be rendered in favor of the plaintiffs Geraldine Benton, Pat Buonincontra, Kim Cifatte and Donna Moore." We do not find clear error in the court's determination.

B

The defendant next argues that the court improperly determined that his conduct was extreme and outrageous. We disagree.

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).

In this case, the court found that there was probable cause to believe that the plaintiffs' action would be successful. The court stated that "[w]hile some may question whether the defendant's conduct, which was clearly rude, unpleasant and, on one or two occasions, crude, rises to the level that is necessary to establish

a claim for intentional infliction of emotional distress, this court nevertheless concludes that [the plaintiffs] have met their burden with respect to a prejudgment remedy." Moreover, because the plaintiffs and defendant worked in close proximity to one another and because of the nature of the employment relationship, it was difficult for the plaintiffs to avoid continued interaction with the defendant. Indeed, the testimony shows that at least one plaintiff felt compelled to endure the defendant's conduct.

After reviewing the record and transcripts, and considering the trial court's unique role in weighing and assessing the testimony of the parties, we do not find clear error in the court's decision. See *Solomon* v. *Aberman*, 196 Conn. 359, 376–77, 493 A.2d 193 (1985).

The defendant further argues that granting a prejudgment remedy in this case may have a detrimental effect on relations between employers and employees throughout the state. The defendant relies on *Perodeau* v. *Hartford*, 259 Conn. 729, 762, 792 A.2d 752 (2002), for the proposition that this lawsuit is against public policy. That case held that "an individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." Id., 762–63. The *Perodeau* court held that if such claims were permitted, "employees who fear lawsuits by fellow employees may . . . promote the interests of their employer less vigorously, may refrain from reporting the improper . . . conduct of fellow employees, may be less frank in performance evaluations, and may make employment decisions . . . on the basis of fear of suit rather than business needs and desires." Id., 758. The court stated that "[a]ll of this conduct would contribute to a less vigorous and less productive workplace," and concluded that such a "per-

vasive chilling effect outweighs the safety interest of employees in being protected from negligent infliction of emotional distress." Id. The court in *Perodeau* is silent, however, on the issue of limiting liability for claims sounding in intentional infliction of emotional distress.

The defendant argues that the public policy concerns addressed by the *Perodeau* court regarding negligent infliction of emotional distress caution against a relaxed standard for finding that workplace conduct can give rise to liability for intentional infliction of emotional distress. There is a distinction between negligent and intentional emotional distress, however, that does not warrant such an extension of *Perodeau*.

To establish a claim of negligent infliction of emotional distress, a plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Id., 749. "[R]ecovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." (Internal quotation marks omitted.) Id.

The difference between the two torts of inflicting emotional distress is significant. As noted by Associate Justice David M. Borden recently, it is less onerous to prove the tort of negligent infliction of emotional distress. "[W]ith respect to proof of the defendant's tortious conduct, the plaintiff has a more difficult burden when the defendant's state of mind is intentional, rather than negligent. . . . [W]here the defendant's state of mind is purposefully to inflict emotional distress on the plaintiff, the plaintiff may not recover unless the defendant's conduct in pursuance of that intent is also extreme and outrageous; but where the defendant did

not have such a malevolent state of mind, but merely was negligent, the plaintiff may recover without having to prove that the conduct engaged in by the defendant was extreme and outrageous." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 452, 815 A.2d 119 (2003) (*Borden, J.*, concurring). Thus, "the more culpable the defendant's state of mind, the more difficult the plaintiff's burden of persuasion will be on the conduct element of the tort, and, therefore, the less likely it is that the defendant will be held liable." Id.; see also *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 446, 782 A.2d 87 (2001).

Further, because recovery for intentional infliction of emotional distress, unlike that for negligent infliction of emotional distress, requires an intent to cause injury; see *DeLaurentis* v. *New Haven*, 220 Conn. 225, 267, 597 A.2d 807 (1991); the safety interest of employees in being protected from intentional infliction of emotional distress is greater than the "safety interest of employees in being protected from negligent infliction of emotional distress." *Perodeau* v. *Hartford*, supra, 259 Conn. 758. Consequently, the policy concerns expressed by the *Perodeau* court are not readily applicable to claims of intentional infliction of emotional distress.

In light of the distinctive requirements of the two claims, we see no reason to extend the holding of *Perodeau* to apply to claims of intentional infliction of emotional distress.

## II

The defendant next claims that the court improperly ordered a prejudgment remedy that authorized each of the four plaintiffs to secure a claim for $25,000. The defendant argues that the court failed to consider the claims of the individual plaintiffs in its determination and, in so doing, failed to establish a basis on which to order a prejudgment remedy. We disagree.

"In assessing the appropriateness and scope of a prejudgment remedy, it is the sole role of the court to evaluate the arguments and evidence produced by both parties in order to determine whether sufficient probable cause exists to sustain the plaintiff's claim." *Cahaly* v. *Benistar Property Exchange Trust Co.*, supra, 73 Conn. App. 281–82, citing *Greenberg, Rhein & Margolis, Inc.* v. *Norris-Faye Horton Enterprises, Inc.*, 218 Conn. 162, 166, 588 A.2d 185 (1991).

A court must take into consideration the facts before it as well as any defenses, counterclaims or setoffs in determining whether there is probable cause to grant a prejudgment remedy in the amount sought. See General Statutes § 52-278d (a).

The defendant's claim that the court acted improperly in granting the prejudgment remedy is not persuasive. Four of the five plaintiffs presented evidence to the court in support of the application for prejudgment remedy. During the hearing, the plaintiffs testified about the "stressful and unpleasant relationship" with the defendant, detailing specific incidents directly impacting each of the plaintiffs and contributing to a hostile work environment. The court evaluated the credibility of the witnesses and found that testimony sufficient to establish probable cause for a prejudgment remedy for the four plaintiffs testifying at the hearing. The court also found that the fifth plaintiff, Cosentino, who also had applied for the prejudgment remedy but did not testify at the hearing, failed to establish probable cause for the claim of intentional infliction of emotional distress.[4] We conclude that the court evaluated the plaintiffs' claims individually and, therefore, that the prejudgment remedy entered by the court was not improper.

---

[4] The court did not consider the affidavit of the fifth plaintiff.

## III

The defendant's final claim is that the court failed to comply with § 52-278d when it refused to consider his potential counterclaims during the prejudgment remedy hearing. The defendant argued, both in his written opposition to the plaintiffs' application for the prejudgment remedy and at the hearing on the application, that he intended to raise counterclaims in the main action. In essence, the defendant now argues that the court refused to consider the validity of his potential counterclaims. We disagree.

The defendant correctly notes that a court is required to take into account any defenses, counterclaims or setoffs asserted by the defendant. "Section 52-278d explicitly directs the trial court to take into account any counterclaims raised by a party in determining whether there is probable cause that a judgment in the amount sought by the applicant will be rendered. The statute provides in relevant part that the probable cause finding made during a prejudgment remedy hearing and any resulting order shall be made 'upon consideration of the facts before [the court] and taking into account *any* defenses, counterclaims or set-offs . . . .' General Statutes § 52-278d (a). We note the absence of any qualifying language that would condition a court's obligation to do so on the manner in which the counterclaim has been raised." (Emphasis in original.) *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 690, 795 A.2d 1274 (2002).

In this case, the court considered the defendant's assertion that a setoff or counterclaim existed to be without merit. In an articulation of its decision, the court found that the defendant's intended counterclaims would be an improper joinder because they did not arise out of the same transaction or occurrence that was the subject of the plaintiffs' claims. Thus, it is

clear that the court considered the defendant's potential counterclaims and determined that they would be improper as counterclaims. The court did not make a determination regarding the validity of the defendant's claims, but noted that "should the defendant file suit [on his claims], he may seek a prejudgment remedy to secure his claims." We conclude that the court properly considered the defendant's potential counterclaims pursuant to § 52-278d.

The judgment is affirmed.

In this opinion the other judges concurred.