**Mantoris C. JONES**

v.

**CITY OF HARTFORD, et al**

**No. CIV.A.3:01CV1133(JCH).**

United States District Court,
D. Connecticut.

Sept. 30, 2003.

Kenneth William Gage, Terence J. Gallagher, III, Day, Berry & Howard, Stamford, CT, Toya Alek Graham, Waterbury, CT, for plaintiff.

William J. Melley, III, Law Offices of William J. Melley, III, Hartford, CT, James J. Szerejko, Halloran & Sage, Hartford, CT, for defendant.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 53]

HALL, District Judge.

The plaintiff, Mantoris Jones ("Jones"), brings this action pursuant to 42 U.S.C. § 1983 against the defendants, City of Hartford ("City"), Bruce Marquis ("Marquis"), Robert Murtha, Timothy McGrath, Shawn Nichols and Ferndando Rodriguez ("officers"), (collectively "defendants"), alleging violation of his Fourth Amendment rights. In addition, the plaintiff asserts state law claims of assault and battery, intentional infliction of emotional distress, and liability pursuant to Connecticut General Statutes § 7-465. Finally, the plaintiff seeks to hold the City liable for the state law claims under the doctrine of respondeat superior.

All defendants except Murtha, who was added as a defendant by the Third Amended Complaint on March 27, 2003 [Dkt. No. 63], bring this motion seeking summary judgment on all claims against them in the Second Amended Complaint. For the reasons stated below, the court denies the motion in part and grants it in part.

## I. BACKGROUND [1]

During the time relevant to this complaint, Jones was a resident of Hartford, a municipality of the State of Connecticut.

Timothy McGrath, Shawn Nichols and Fernando Rodriguez were employed as police officers by Hartford. Bruce Marquis was the newly appointed Hartford Chief of Police.

On January 13, 2001, around 4 am, Jones was riding as a passenger in a car driven by Raymond Easterling on Albany Avenue in Hartford. Around the same time, the Hartford Police Department received a report of a car jacking at gunpoint, which they later discovered was a hoax. The caller described a car like that of Easterling.

In response to this report, Officer Rodriguez pulled over Easterling's vehicle and parked behind it. Officer Nichols also arrived at the scene and blocked the front of the vehicle with his patrol car. Other officers also appeared on the scene.

Officer Nichols, with his gun drawn, walked to the front of Easterling's car and ordered Easterling and Jones to get out and put their hands up. Easterling stepped out, and Officers Rodriguez and Nichols handcuffed his right arm to the belt loop in his pants.

Murtha opened the car door on Jones's side. Jones stood up and put his hands on the roof of the car, protesting that he had done nothing wrong. Using profanity, Murtha ordered him to the ground, holding Jones's wrist as he lowered him down. Murtha handcuffed Jones and began to pat him down for weapons. Jones felt like he was being treated too roughly and again protested that he had done nothing wrong.

Jones alleges that Murtha then kicked him "at least five" times in the back of his head. When the blows stopped, Jones

---

1. Because on summary judgment the court must construe all facts and draw all reasonable inferences in the plaintiff's favor, the following description is taken from the plaintiff's substantiated allegations of fact. *See Poe v. Leonard,* 282 F.3d 123, 126 (2d Cir.2002).

turned his head, and Murtha kicked him in the face, making his lip bleed. Easterling testified at his deposition that he heard Jones "oh, oh, oh, yelling and stuff," and "screaming and moaning." Jones asserts that Murtha also bent his thumb back, injuring his wrist. Jones testified that he was on the ground for one and one-half to two minutes.

Murtha then pulled Jones to his feet. Easterling, who was already standing, saw that Jones was bleeding and had his "clothes ripped off of him." He kneed Jones in the groin "at least five" times, and tugged at Jones's pants. Because the pants were secured with a belt, Murtha removed the belt and then ripped open the pants, breaking the zipper and tearing the fabric. Jones's pants and underwear fell to the ground. At this point, Jones says defendant McGrath intervened.

The officers placed him in Nichols's car. Nichols saw Jones in the backseat of the vehicle and noticed that Jones had been injured. Jones complained to Nichols that he had been kicked by an officer.

Officer McGrath interviewed Jones and Easterling. He determined that the car was owned by members of Easterling's family, and that the call had been a hoax. McGrath also observed that Jones's lip was bleeding, and that his clothes were muddy. Jones again complained that he had been treated roughly by an officer. McGrath offered an ambulance, but Easterling told Jones that he would take him to the hospital. McGrath then took Jones from the car and observed that the zipper had been broken on his pants. Easterling and Jones then left the scene; neither was arrested.

As a result of this incident, Jones claims that he has suffered both physical and psychological injuries.

## II. DISCUSSION

### A. Standard of Review

The role of the court on summary judgment is "not to try issues of fact, but only to determine whether there are issues of fact to be tried." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 253 (2d Cir.2002).

Pursuant to the court's statements at the March 27, 2003 status conference, the court rules only on claims as contained in the Second Amended Complaint, though it can consider the totality of the evidence that the plaintiff presents in support of his Opposition. The court notes, however, that the claims of Jones's Third Amended Complaint that are unaffected by this ruling will remain pending.

### B. Jones's Section 1983 Claims Against the Individual Officers

Jones asserts claims under Section 1983 for violation of his Fourth Amendment rights, alleging that he was unlawfully subjected to excessive force.[2] The defendants deny that any constitutional violation occurred and argue that they are in any case entitled to qualified immunity.

#### 1. Excessive Force Claim

In the First Cause of Action of the Second Amended Complaint, Jones claims that the officers used excessive force against him during the incident on January 13, 2001. When read in light of what he recounts occurred that morning, this amounts to an allegation that Officer Murtha used excessive force, and that Officers McGrath, Nichols, and Rodriguez failed to intervene to prevent or to put a stop to Murtha's violation of Jones's constitutional rights.

█ In the context of an excessive force claim, determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of the nature and quality of the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "It is well established that the 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir.2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Reasonableness is judged from the perspective of a "reasonable officer on the scene," not in hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. It depends on factors specific to each particular case, like (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 397, 109 S.Ct. 1865.

There is no question that the plaintiff has come forward with sufficient evidence, if believed by the jury, to show that Murtha's actions violated Jones's constitutional rights. Jones contends that he did not resist arrest in any way, and that he and Easterling were not attempting to leave the scene. Jones was already cuffed and on the ground when he says Murtha kicked him. Murtha had already determined that Jones had no weapons by the time he pulled Jones back to his feet, and allegedly kneed him in the groin. Finally, Jones alleges that Murtha took off Jones's belt, and then ripped off and allegedly pulled down Jones's pants and underwear. In his deposition, Murtha admitted that the plaintiff's pants fell down; Officer McGrath also testified that when he interviewed Jones, he noticed that his lip was bloody and his zipper was broken. As such, plaintiff has clearly alleged sufficient facts to establish a violation of his Fourth Amendment rights by Officer Murtha, who was first named in the Third Amended Complaint, has not moved for summary judgment.

#### 2. Failure to Intervene

In the First Cause of Action of the Second Amended Complaint, the plaintiff alleged claims against Officers McGrath, Rodriguez, and Nichols for violation of his constitutional rights under Section 1983.

---

**2.** The complaint also mentions "unlawful detention," but nothing in the plaintiff's papers suggests that he intends the allegation to be considered as distinct from his excessive force claim, and neither party briefed this allegation.

The officers argue that they are not liable under Section 1983 because they were not personally involved in the alleged incident involving Jones. They also argue that in any case, they are entitled to summary judgment on grounds of qualified immunity. The plaintiff contends that the officers can be held liable under Section 1983 for failing to intervene to prevent his injuries.

### (a) Nichols and Rodriguez

The plaintiff contends that Nichols and Rodriguez were on the scene and observed or had reason to know of Murtha's abuse. The defendants concede that Officers Rodriguez and Nichols, who removed Easterling from the car, were on the scene at the time of Murtha's alleged use of excessive force against Jones, but argue that, from their vantage points, they were not aware of any interaction that might have taken place between Murtha and Jones. The plaintiff testified that he was unaware of where any of the other officers were during the time of his injuries. Easterling testified in his deposition that, while on the ground himself, he heard Jones yell and was able to see Jones's body by looking underneath the car, but was unable to see what was going on. He further testified that when Rodriguez and Nichols then made him get up from the ground and stand up, he saw Murtha pull Jones to his feet. He did not see Murtha knee Jones or pull off his pants, but he did testify: "I noticed Mantoris bleeding and clothes ripped off of him.... His shirt was ripped off and his pants were up and his belt buckle was broken."

■ Police officers "have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994) (internal citations omitted). Whether an officer had a "realistic opportunity to intervene to prevent the harm from occurring" is a "question of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* In evaluating a claim of failure to intervene, the court must look separately at different episodes of force that may, together, make up the plaintiff's claim. *O'Neill*, 839 F.2d at 11. Here, the plaintiff's claim can be divided into three episodes: when Murtha allegedly kicked Jones while he was on the ground; when Murtha allegedly kneed Jones once he was standing; and when Murtha allegedly unbuckled Jones's belt and tore and pulled down his pants and underwear.

■ The plaintiff's evidence fails to present sufficient facts to support the inference that Nichols and Rodriguez could have intervened to prevent Murtha from kicking Jones while Jones was on the ground. Easterling testified that he could hear Jones yell as Murtha kicked him, but the plaintiff has presented no evidence that would suggest that Rodriguez and Nichols, who were busy securing Easterling at the other side of the vehicle, were aware of or able to see Murtha's alleged beating of Jones. Even assuming that Nichols and Rodriguez had known about Murtha's kicking of Jones on the ground, plaintiff must still be able to show that they "had a realistic opportunity to intervene to prevent the harm from occurring." *Anderson*, 17 F.3d at 557. On the plaintiff's facts, no reasonable jury could infer

that Rodriguez and Nichols, who were on the other side of the vehicle, could have intervened in sufficient time stop the "three to five kicks." Indeed, the blows occurred with such "rapid succession" that the officers had "no realistic opportunity to prevent them." *O'Neill,* 839 F.2d at 11. "This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *Id.* at 11–12. As such, there is "insufficient evidence to permit a jury reasonably to conclude that [Rodriguez's and Nichols's] failure to intercede was a proximate cause of the beating." *Id.* at 11.

Again like the situation in *O'Neill,* however, the second and third episodes are different. First, Easterling testified that he was standing when Murtha pulled Jones to his feet, and could see Jones. This creates an issue of fact as to whether the officers, who were securing Easterling, could also see Jones at that time. This dispute is material because the plaintiff alleges that, once he was standing, Murtha kneed him in the groin several times. While, as discussed above, the officers may have had difficulty intervening in time to stop the kneeing, a jury could find that Jones's previous yells should have "alerted" the officers of the "need to protect" Jones from "further abuse." *O'Neill,* 839 F.2d at 12.

Jones also claims that after kneeing Jones, Murtha unbuckled Jones's belt and then tore at his pants and underwear making them fall down, exposing him in the middle of a public street. On the plaintiff's facts, the kneeing and process of unbuckling and pulling down Jones's pants would have taken enough time to have given the other officers, who according to Easterling's testimony, could have seen what was occurring, a reasonable opportunity to intervene.

The officers argue, however, that they are still entitled to summary judgment on qualified immunity grounds. Even though the defendant officers' failure to intervene may have violated the defendant's constitutional rights, the court may still grant their motion for summary judgment if it finds that, when viewing the facts in the light most favorable to Jones, the defendant officers are entitled to qualified immunity for their conduct. *See Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151.

■ A government official sued in his individual capacity is entitled to qualified immunity if his conduct is prohibited and if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, or if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken. *X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999) (internal quotations and citations omitted). The question is "what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999) (citation omitted). In other words, "the unlawfulness must be apparent." *Id.*

■ If the jury believes the evidence as Jones presents it, Rodriguez and Nichols would not be entitled to qualified immunity. No reasonable officer would believe, on those facts, that Murtha was justified in kneeing a handcuffed, non-resisting suspect "at least five times" in the groin, and then unbuckling his pants, pulling them down, and exposing him in the middle of a public street. Nor would a reasonable officer believe, again on those facts, that he did not have a duty to stop the abuse. The duty to intervene to prevent excessive force was clearly established, *see, e.g., Anderson,* 17 F.3d at 557, and Murtha's

conduct, on Jones's evidence, was inherently unreasonable. It would have been "clear to a reasonable officer" that failure to intervene in such a situation was unlawful. *Stephenson*, 332 F.3d at 77. The defendants' motion for summary judgment as to claims against Nichols and Rodriguez stated in the First Cause of Action is granted as to failure to intervene to prevent Murtha's kicking of Jones, but denied as to failure to intervene to prevent Murtha's kneeing and exposure of Jones.

**(b) McGrath**

■ The plaintiff also alleges that defendant McGrath, who was in charge on the scene, failed to intercede. The defendants contend that McGrath did not arrive on the scene until after the plaintiff was in Nichols's car. They also point to the plaintiff's deposition testimony, where he conceded that McGrath was not on the scene at the time when the plaintiff was pulled from the car.[3] The plaintiff did, however, testify that McGrath saw Murtha rip Jones's pants and intervened. As a result, taking the evidence in the light most favorable to the plaintiff, McGrath arrived on the scene sometime between the time Nichols pulled Jones from the car, and when McGrath pulled Murtha away from Jones.

This "best inference" does not create a triable issue as to McGrath's failure to intervene. First, the plaintiff concedes that McGrath was not on the scene when he was pulled from the car, and does not present evidence of when McGrath finally arrived on the scene. Second, the plaintiff testified that McGrath did intervene, though the Jones alleges that the intervention was "belated." On the totality of the evidence, then, there is no basis to infer

that McGrath could have intervened earlier than the plaintiff alleges that he did.

Nor does the fact that McGrath denies that he was on the scene at all before the plaintiff was in Officer Nichols's car create an issue of material fact. Even if McGrath arrived on the scene earlier than he claims, the plaintiff still presents no evidence to show that McGrath, who the plaintiff alleges did actually intervene, had "a realistic opportunity" to intervene earlier to prevent the alleged constitutional violation by Officer Murtha. *Anderson*, 17 F.3d at 557. Defendant McGrath's motion for summary judgment on the Section 1983 claim against him (First Cause of Action) is granted.

**C. Monell Claim**

**1. Motion to Strike**

As an initial matter, the defendants move to strike [Dkt. No. 74] as improper certain exhibits to the Plaintiffs' Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 65]. Specifically, they argue that the court should strike the affidavit of Philip Tegeler, and Exhibits 1–13, and the affidavit of Terence J. Gallagher, and Exhibits 1,4,5,9, and 10. Defendants argue that the exhibits are improper because they are hearsay that would not be admissible at trial.

The Tegeler affidavit testifies to the process through which Tegeler obtained, pursuant to the Freedom of Information Act ("FOIA"), records of all pending cases and all settlement agreements entered into in lawsuits against the Hartford Police Department or individual officers. Exhibits 1–3 of the Tegeler affidavit are letters documenting the process through which Tegeler obtained the records; Exhibit 4

---

**3.** "Q: What was McGrath doing? A: He wasn't there. Q: Do you know that Nicholas [sic] was there? A: Yes, I am not sure where he was as far as on the scene. But he was there."

contains abstracts of excessive force claims in litigation, produced by the City; Exhibits 5–11 are further materials documenting Tegeler's continued FOIA requests; Exhibit 12 contains materials, produced by the City, regarding excessive force cases settled by the city on behalf of the Police Department; and Exhibit 13 contains a final letter from Attorney Tegeler regarding the FOIA process.

The Gallagher affidavit lists the attached documents, including the Consent Decree entered against the department in *Cintron v. Vaughn,* 3:69–CV–13578 (D.Conn.) (Exhibit 1); the Department budget (Exhibit 4); Jones's medical records from his hospital visit after the alleged beating (Exhibit 5); psychiatric reports (Exhibit 9 and 10).

■ The plaintiff argues that the litigation and settlement materials and *Cintron v. Vaughn* consent decree are admissible to show notice. The court agrees. Complaints can be considered as support for a Monell claim. *Cf. Thomas v. Roach,* 165 F.3d 137, 145 (2d. Cir.1999) (four complaints presented by plaintiffs as evidence on "custom and practice" were unfounded or not sustained). Unlike *Thomas,* however, where the plaintiffs presented four complaints but the officer was exonerated from two of them, and it was determined that the third named the wrong officer, and that the fourth was unfounded, Jones has presented evidence of over 70 excessive force complaints made against the department in four years. These complaints, considered for the fact that the City and the police department knew that citizens were accusing its officers of using excessive force in the course of their duties, are relevant to Jones's claim that the City acted with deliberate indifference. The motion to strike Tegeler Exhibits 4 and 12 and Gallagher Exhibit 1 is denied.

■ As to the remainder of the Tegeler exhibits, the defendants' motion is denied in part. Exhibits 1 and 5, which are letters from Tegeler to the City's Corporation Counsel and Assistant Corporation Counsel, requesting, pursuant to FOIA, copies of "all settlement agreements entered into on behalf of the Department and its individual officers" and "all pending cases against the Hartford Police," are admitted not for truth but for notice and for the scope of the FOIA requests. Exhibits 3 and 8 are admitted as statements of a party opponent, but were not used by the court in deciding this motion for summary judgment. The court did not consider exhibits 2, 6, 8, 9, 10, 11, and 13, in deciding this motion and declines to rule on their admissibility at this time.

■ The defendants' motion to strike the Gallagher exhibits is also denied. Exhibit 4, the Department budget, is admitted as the statement of a party opponent, and the defendants' authentication objection is overruled. Exhibits 4, 9, and 10 are medical reports that the court can consider on summary judgment on the assumption that the physicians who originated the reports will be available to testify at trial if necessary; as a result, the motion to strike Exhibits 4, 9, and 10 is denied.

The defendants also move to strike both the Tegeler and Gallagher affidavits as impermissible testimony. The court, however, reads these affidavits as simply outlining the contents of the attached exhibits, and denies the motion to strike.[4]

### 2. Hartford's Liability: Policy or Custom

Defendants argue that the court should grant summary judgment on the plaintiff's

---

**4.** The court also notes that it did not rely on either affidavit in considering and deciding

this motion for summary judgment.

claims against Hartford because the plaintiffs have failed to demonstrate a violation of Jones's constitutional rights; because the plaintiffs have failed to present sufficient evidence to support a jury verdict on their claims that Hartford failed to train its police officers; and because, contrary to Jones's contentions about Hartford's policy for reporting excessive force, Hartford instructs all of their recruits that they have a duty to report constitutionally prohibited acts by other officers.

As to the defendants' first argument, the court has already concluded, as discussed above, that on Jones's version of the facts, Murtha's acts are sufficient to demonstrate a violation of his constitutional rights. However, the summary judgment motion pending before the court seeks judgment on the claims of the Second Amended Complaint. As discussed *supra,* however, Jones has also presented facts sufficient to demonstrate that his constitutional rights were violated when Officers Rodriguez and Nichols failed to intervene to prevent Officer Murtha from kneeing Jones and pulling down Jones's pants and underwear in a public street.

■ Moreover, Jones has sufficiently alleged a "policy or custom" attributable to the City of Hartford to avoid summary judgment on his *Monell* claim. A municipality is not responsible in respondeat superior for unconstitutional acts committed by its employees; rather it is only subject to Section 1983 liability where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality is liable for policies made by its lawmakers or by those with policymaking authority. *Anthony v. City of New York,*

339 F.3d 129, 139 (2d Cir.2003) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). A municipality is also liable for "customs" or unofficial policies derived from circumstantial proof. *See Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir. 1989). This includes liability for a "deliberate government policy of failing to train or supervise its officers," when this failure to train amounts to a "deliberate indifference to the rights of the persons with whom the police come into contact." *Anthony,* 339 F.3d at 140 (quoting *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ The parties disagree about the extent of training for felony stops that Hartford provides: Jones argues that an officer receives no felony stop training after the Hartford Police Training Academy, and that officers (like Murtha) who do not attend that academy are never trained by Hartford in felony stop procedure. This is supported by the depositions of the officers. Jones further argues that training provided is inadequate and cites the consent decree in *Cintron v. Vaughn* as evidence that the Department's failure to properly train its officers is longstanding. The defendants contend that more training exists and that the training is adequate. This creates an issue of material fact for the jury. *See, e.g., Lucente,* 310 F.3d at 253.

The parties also disagree about the Hartford Police Department's policy for reporting constitutional violations. The plaintiff contends that Hartford does not require officers to report excessive force used by other officers, but instead only requires self-reporting, and the depositions of the officers support this claim. The defendants claim through affidavit that all recruits are instructed to report violations

by other officers. This also creates an issue of material fact.

On the plaintiff's facts, the City's failure to properly train officers for felony stops and its failure to institute proper reporting policies would directly contribute to the failure to intervene violation that Jones alleges in the Second Amended Complaint. An officer who has not been trained in proper, constitutional felony stop procedures has implicitly been left untrained as to how to recognize when such procedures are unlawfully employed by others. Similarly, a policy that requires officers only to report the force they themselves use encourages them only to note and monitor their own force, not that of others. As a result, the defendants' motion for summary judgment on the Fourth Cause of Action of the Second Amended Complaint is denied.

### D. Chief Marquis's Supervisory Liability

■ Jones also alleges Section 1983 supervisory liability claims against Chief Marquis. A supervisor may not be held liable under Section 1983 "merely because his subordinate committed a constitutional tort." *Poe*, 282 F.3d at 140. Instead, a supervisor's liability on a Section 1983 excessive force claim is "for distinct acts or omissions that are a proximate cause of [the subordinate's excessive] force." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.1999). A supervisor is liable if he directly participated in the violation, if he exhibited deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring, or if he was grossly negligent in supervising the subordinates who committed such wrongful acts. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir.2001). The plaintiff must demonstrate "an affirmative causal link between the supervisor's inaction and [his] injury." *Poe*, 282 F.3d at 140.

The plaintiff alleges that Marquis allowed the Department's unconstitutional policy and custom with regards to excessive force to continue and that his actions amounted to "deliberate indifference" to the rights of Jones and other people who would come in contact with Hartford officers, and that he was grossly negligent in managing his subordinates. In support of summary judgment, defendants contend that Marquis had only been the chief for six weeks at the time of the incident, and on that basis cannot be held liable for Jones's injuries. The plaintiff counters that Marquis "should have known, from the day he took office, that the police department was operating under the dictates of the Consent Decree, and that the federal court had earlier that year appointed a Special Master to oversee the City's compliance." The plaintiffs also argue that he was grossly negligent in not establishing a different reporting procedure.

■ Even on Jones's allegations that the Department had an unconstitutional policy or custom that Marquis was aware of and allowed to continue, Jones has not demonstrated that any such failure amounted to gross negligence or deliberate indifference by Marquis. The Second Circuit has "equated gross negligence with recklessness, and have defined it as the 'kind of conduct ... where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'" *Poe*, 282 F.3d at 140 & n. 14 (quoting *Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir.1991)). Marquis's inaction for six weeks did not amount to this "conscious disregard or indifference." Similarly, given his short time in charge of the force, Marquis's conduct was not the "less-

er form of intent" that constitutes deliberate indifference. *Id., citing Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 n. 7 (5th Cir.1994). *See also Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994) ("continued inaction" required for deliberate indifference). *Cf. Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003) (describing, in the Eighth Amendment context, deliberate indifference as "a state of mind ... equivalent to criminal recklessness").[5]

 Marquis also argues that he is entitled to summary judgment on grounds of qualified immunity, and the court agrees. During those first six weeks on duty, when Jones alleges that Marquis failed to act to remedy the department's constitutionally defective practices, the right to be free from excessive force was also clearly established. However, Marquis's supervisory liability must have also been clearly established. *See Poe*, 282 F.3d at 140–141 (both underlying violation and doctrine under which supervisor is held liable must be clearly established). While general liability for supervisors was established, it must also have been clearly established that Marquis's failure to address the department's policies would violate Jones's constitutional rights. *Id.* at 140–141 (finding that the supervisor's liability must be "clearly established in the particularized context of the facts at hand"). It was established that supervisors have a duty to respond to complaints against their subordinates. *See, e.g., id.* at 141, *citing Fiacco v. City of Rensselaer*, 783 F.2d 319, 329–31 (2d Cir.1986). Plaintiffs have presented no evidence, however, that Marquis received specific complaints regarding officers Rodriguez or Nichols. Instead, they argue that Marquis failed to sufficiently address the complaints of force

lodged against the Department and evidenced by the Consent Decree. The court can find no case law that indicates a time line for responding to such general complaints of force, or suggesting that it was clearly established that Marquis's failure to address the general problems with the Department's felony stop training and excessive force reporting immediately upon taking office would rise to the level of deliberate indifference or gross negligence.

 An officer is also entitled to qualified immunity if his "actions are objectively reasonable"; in other words, if "officers of reasonable competence could disagree on the legality of the defendants' actions." *Ford v. Moore*, 237 F.3d 156, 163 (2d Cir.2001). The court finds that, even if Marquis's failure to act in his first weeks in office did constitute a violation of a clearly established constitutional right, it was reasonable for Marquis, given that he had only recently been appointed head of the Department, not to have acted yet to address the types of problems that the plaintiff alleges. As a result, even on the plaintiff's facts, any failure on Marquis's part to reform training practices or institute a new policy for reporting of constitutional violations by officers is objectively reasonable. To hold otherwise would be effectively to hold Marquis liable in respondeat superior. Thus, Marquis is entitled to qualified immunity. Summary judgment is granted for Marquis on the Third Cause of Action.

### E. State Law Claims

#### 1. Assault and Battery

Jones alleges in the Second Cause of Action that Officers McGrath, Rodriguez and Nichols are liable for assault and bat-

---

**5.** Even assuming Marquis's acts or omissions did rise to the level of deliberate indifference or gross negligence, the plaintiff would still have to demonstrate that his conduct was, in that short time, a "proximate cause" of Jones's injuries. *See Poe*, 282 F.3d at 140.

tery. The plaintiff's facts, however, support that he was beaten and otherwise physically touched only by Murtha.

■ Jones cites two Connecticut state court decisions, *Keane v. Main*, 83 Conn. 200, 76 A. 269 (1910), *Capro v. Perugini*, 4 Conn.Supp. 312, 1936 WL 1345 (Nov.6, 1936), for the proposition that the other officers can be held liable for giving tacit consent to the abuse. The types of behavior that these two dated cases rely on, for finding that a defendant who did not actually touch the plaintiff is a joint tortfeasor, are qualitatively different from the alleged actions of McGrath, Nichols and Rodriguez. In *Keane*, one defendant, who was the "first selectman" of the City of New Haven "gave a nod" to the town constable, who then "placed his left arm across the plaintiff's breast, and reached over with his right and quickly pulled his badge off before the plaintiff could make any resistance." 76 A. at 269. In *Caprio*, the court determined that the defendant who did not actually strike the plaintiff "started the fight" and "followed the plaintiff" so her brothers could continue the assault on him, and thus had a "common and joint purpose." 4 Conn.Supp. 312, 1936 WL 1345 at *1. There is no evidence that Rodriguez, Nichols, and McGrath similarly directed Murtha to abuse the plaintiff or affirmatively acted to aid Murtha in his actions. The defendants' motion for summary judgment on the claims of assault and battery against McGrath, Rodriguez, and Nichols in the Second Cause of Action of the Complaint is therefore granted.

## 2. Intentional Infliction of Emotional Distress

The defendants also argue that Jones's claims against Nichols, Rodriguez, and McGrath (Sixth Cause of Action) and Marquis (Seventh Cause of Action) for intentional infliction of emotional distress must fail because the officers had no direct involvement with Jones when he was removed from the car at the time of the incident, and because their conduct was not "extreme and outrageous."

■ For Jones to prevail on his case for liability for intentional infliction of emotional distress, he must show (1) that each officer intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Benton v. Simpson*, 78 Conn.App. 746, 829 A.2d 68, 74 (2003). Extreme and outrageous behavior is of a kind that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 815 A.2d 119, 126 (2003).

■ Given the court's conclusion, above, that the plaintiff has not presented sufficient evidence that McGrath failed to intercede to prevent the violation of plaintiff's constitutional rights, the defendants' motion for summary judgment on the Sixth Cause of Action as to McGrath is granted. Similarly, given the basis for court's ruling, above, that Marquis cannot be held liable for the officers' alleged violation of Jones's constitutional rights, and that he is in any case entitled to qualified immunity, as well as the reasons outlined for that finding, summary judgment is granted on the Seventh Cause of Action.

■ Because there are material issues of fact as to Officers Rodriguez and Nichols and what opportunity they may have had to intervene to prevent Jones's inju-

ries, however, the court leaves the issue of whether the officers "intended to inflict emotional distress or knew that emotional distress was the likely outcome of their actions," or whether their failure to intervene was "extreme and outrageous" to the jury. The defendants' motion for summary judgment on Count 6 as to Nichols and Rodriguez is, therefore, denied.

### 3. Indemnification Pursuant to Conn. Gen.Stat. § 7–465

Connecticut General Statute Section 7–465 allows a plaintiff to seek indemnity from a municipality based upon the actions of a municipal employee within the scope of his municipal employment. Defendants argue in their motion that plaintiff has failed to establish the liability of any officer, and thus cannot seek indemnification. Clearly an indemnification claim cannot be based on Officer McGrath's conduct. Because claims remain against Officers Rodriguez and Nichols (and in the Third Amended Complaint, also against Officer Murtha), there is still a basis on which the plaintiff can seek indemnity. The motion for summary judgment on the Fifth Cause of Action of the Second Amended Complaint is therefore denied.

### 4. Respondeat Superior as to Hartford

Similarly, defendants also argue that Jones has failed to establish the liability of any officer, and thus cannot pursue respondeat superior liability against Hartford. Because state law claims remain against Officers Rodriguez and Nichols (and in the Third Amended Complaint, also against Officer Murtha), there is still a basis for respondeat superior liability. The motion for summary judgment on the Eighth Cause of Action of the Second Amended Complaint is therefore denied.

## III. CONCLUSION

For the reasons discussed above, the defendants' motion is GRANTED: on the First Cause of Action as to McGrath only; on the Second Cause of Action, as to McGrath only; on the Third Cause of Action; on the Sixth Cause of Action, as to McGrath only; on the Seventh Cause of Action. The remainder of the motion is DENIED.

The following counts of the Third Amended Complaint are still pending: First Cause of Action as to Murtha, Nichols, and Rodriguez; Second Cause of Action as to Murtha; Fourth Cause of Action, against Hartford, based on the allegations of excessive force against Murtha and failure to intervene against Nichols and Rodriguez; Fifth Cause of Action; Sixth Cause of Action; and Eighth Cause of Action.

**SO ORDERED.**